My name is Michael Donahoe. I'm here on behalf of my client, Gerald Rider. The case presents a sentencing issue, and it's our contention that the sentence imposed was unreasonable in terms of its consecutive nature to the first case that Mr. Rider was involved in. The Basic Counsel, could I ask a couple of questions? Yes, Your Honor. Please do. As I understand it, the government concedes error on a lifetime supervised release. Yes, Your Honor. That we don't need to hear. On the consecutive sentences, I didn't see the problem in terms of fairness, because it's different victims. And I didn't see the problem on deal, because there it was prosecutorial manipulation to turn a five-year mandatory minimum consecutive into a 20-year mandatory minimum consecutive. Here, the judge had discretion. It wasn't a mandatory minimum. And there doesn't seem to be any possibility of prosecutorial manipulation. So why shouldn't deal be distinguished? All right. Your Honor, thank you. I think it's a fair summary of what my claims are. You've aired them. And I'm going to begin, I think, with a concession. I'm not going to say here that Judge Haddon didn't have discretion. He had discretion to impose the sentence that he did. But I do want to argue that it was unfair. If Your Honor would please think about this. The first sentence was in 2002. It was imposed, 168 months, mandatory guideline regimen. If all of the victims at that point in time had been identified, these are just unusual facts. Your client could have done that. I remember a period when double jeopardy was interpreted differently in Alaska law. I don't know if it was national. So if somebody killed somebody driving drunk, he'd rush in the next morning and plead guilty to drunk driving in order to bar the murder charge. He'd confess everything. Your fellow had molested these children, and they could have found out at the same time and expanded the indictment and run it all as one case if he'd have told them. It was in his hands. And respectfully, I think the problem with that, Your Honor, I've thought about that, is the Mitchell problem. He clearly had rights in the context of that original prosecution. He maintained his right to silence. It endured through that entire prosecution to include the sentencing. But did he plead? He did. And in both instances, he pled guilty, Your Honor. But after he pled, he certainly had the opportunity to fully spell out everything he'd done. Well, he could, but I think that that needs to be weighed against his right to maintain silence. Yes, but if he wants the benefit of one sentence, he needed to tell all. What he was doing, he was hoping to limit the sentence by not confessing anything more than what the government knew at that time. Is that right? Your Honor, and maybe that's so, but maybe it's not so. I think that assigns to this defendant a pretty sophisticated understanding of how the guidelines worked. We're talking about a Native American defendant here with limited education, limited life experience, and some other problems in connection with that, I think an alcohol problem, living on an Indian reservation. I think today standing here to say that this individual fully apprehended or understood that he could ratchet up his sentence, take care of all his legal business if he disclosed every victim, I can't speak to that. Is it the fault of the government that the victims weren't all identified at the outset? Because I understood that the other victims at first denied that there was a problem and later made a disclosure. So I mean, is this the government's fault that we have two prosecutions? No, Your Honor. I don't think it's – you talk about assigning blame. I don't think that there's blame to be assigned to the United States. But the circumstances are unusual, I can say, as a matter of experience. And I think my colleague, Ms. Sook, would agree that in these cases, as a general matter, there's a full airing of all of the conduct. It's explored, all the witnesses are discovered, they're debriefed, and it becomes part of the record. It just didn't happen here for whatever reason. Whether the people that were involved weren't forthcoming in the first instance, I don't know. But I can say that my office, myself as an individual lawyer, I think many Federal defenders try and take the precaution of clarifying what the legal business is that needs to be addressed with a particular case and a particular individual. Do we have a transcript of that plea hearing? We have both plea hearings, Your Honor. And you have the transcript? Yes, Your Honor. And they're both included in my excerpts, yes. And do you think that from examination of that, that your client had a fair opportunity and was asked, is there anything more? Are we talking about in the first case? Yes. Yes, I do. But I think I want to say as a general matter that in framing the first sentence, if we can talk about the court's role, it was clearly understood by Judge Haddon that there were other victims involved in the first case. That were not identified. That were not identified, precisely, Your Honor. And if that was the case, that first sentence took into account in a manner of speaking the fact that there were other unidentified people out there. And that's part of the argument here. And if you add to that the fact that the six victims that were identified later, there were incremental increases in the guideline range to take him up to 235 months. Even if we added the two victims from the first case into that calculation, that guideline range wasn't going to change a whole heck of a lot. So even if there had been a bump in the second case, by accounting for the first case, if you get my drift here, that overall composite sentence would have been nowhere near 405 months. You mean if all the victims had been listed in the first one? Yes, Your Honor. How would that be? As I recall, you don't usually group for multiple victims. You don't, exactly. But as I think our blue brief lays out, there is an incremental increase. There's a unit analysis, and that unit analysis was conducted in the second case. And every victim in the second case was accounted for. So there was full disclosure, there was identification, and there was complete acceptance between the two cases. So if they had been brought as one case, the sentence would have never, under any circumstances, I think, exceeded 300 months. I'd like to reserve a couple minutes for rebuttal, if that's okay. Thank you, counsel. Thank you. Good morning. I'm Lori Sook, an assistant U.S. attorney in Montana. In this case, it is not any conduct on the part of the government that resulted into prosecutions. But is the government aware that there were other unidentified victims? We were told through interviews of the child who is actually the subject of the count that Mr. Ryder put guilty to, and as well, there were additional victims identified in other counts where it actually dismissed as part of the plea agreement, in the first case that alluded to the fact that there were other victims. And, in fact, that's what led to the questioning of two of the victims in this case who denied that they had been abused when they were questioned during that first investigation. We were aware that Mr. Ryder had access to more children because he was babysitting on the reservation. They just weren't identified any more than there are other victims. Well, wouldn't it have been incumbent upon the government, knowing that, to do a full investigation and bring it all at once in the first case? We tried to do that. As I've stated, two of the victims in this case were interviewed as a follow-up to the victims who had disclosed in the first case. They denied being abused, and we didn't have any other identifying information until after Mr. Ryder was sentenced in the first case. The two victims then actually disclosed that they had lied before and they were abused by Mr. Ryder, and they identified the other four children. And there may be more children out there that we have not identified, but it was almost a domino effect. The children identified the next children, identified the next children, the child. That's how the investigation went in this case. It certainly proceeded that way in the first case but was stymied. There was just no more information. I'm certain that the investigation wasn't perfect, Your Honor, and maybe there could have been more that should have been done in the first case. But it wasn't anything intentional. We tried to identify additional victims. The victims that we had identified were what we moved forward on at that time. It was only after Mr. Ryder was out of the community that other additional victims came forward. Did you ask for a higher sentence than was given the first time based on the fact that there were additional unidentified victims? In the second case that I asked in the first case? In the first case. I'm sorry. I wasn't the prosecutor in that case. That's – I do believe that a guideline sentence was advocated for, a high-end guideline sentence in that case. I don't believe – my remembrance is that there was any departure request in the first case. And that's what was imposed was a high-end guideline sentence. One comment that I would like to make is that Judge Haddon, when he did impose the first sentence, took into account all of the additional victims. And therefore, his sentence is unfair because he should have then taken that into account and not sentenced consecutively. There's a difference between assuming or maybe speculating, maybe more than speculation, that there are additional victims. And the detail and facts that he had before him when he sentenced Mr. Ryder the second time, when he had all six children, identifying exactly what was done to them by Mr. Ryder and the extent of the abuse. So to say that he took the full extent of Mr. Ryder's conduct into account in the first case is really not true. He knew there were additional victims, but he certainly didn't know what had been done. And that's certainly what was the thrust of his sentence and the fact that he felt he needed to impose a consecutive sentence in the second case. He was very clear about his intent that Mr. Ryder have a sentence that would not allow him to have access to children ever again. I think he was that blatant. And so given what he knew in the second time around when he had the details, he did not know the extent of the conduct the first time around. Are there any other questions from the panel? Thank you, Counsel. Thank you. Thank you, Your Honors. I won't use the full two minutes. I just wanted to say that in light of the government's argument as a matter of rebuttal, that respectfully this case presents a perfect opportunity to address a post-Booker case and the nature of the advisory guidelines here. The situation is such that if this case had been brought as one case, that it clearly the guideline range would have been somewhere around 240, 235 months, that advisory guideline range. Even assuming some upward departure or some bump from that basic advisory sentence, the reasonable sentence would not be, the outer perimeter of 405 months would not be a reasonable sentence. And we just ask the Court to please think about it in those terms, the reasonableness of the sentence. Granted, there was a more detailed understanding on Judge Haddon's part. I don't doubt that. But he nevertheless in the first case had an idea that there were other people involved. And unfortunately, that just didn't come to fruition or understanding until a later time. Thank you, Your Honors. Thank you, Counsel. United States v. Ryder is submitted.
judges: Fletcher, Kleinfeld, Gould